**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
　　　　Plaintiff - Appellee,

　　v.　　　　　　　　　　　　　　　　　Nos. 24-4296 & 24-4517

WAYNE PRINCE & DAVID WARREN,
　　　　Defendants - Appellants.

## GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE APPEALS OR SUMMARILY AFFIRM THE JUDGMENTS BELOW

The United States of America hereby replies to appellants' opposition to its motion to dismiss their appeals (as barred by valid waivers of appeal) or summarily affirm the judgments below (since there is no factual basis for the only claim of error being raised). *See* Dkt. 65 (appellants' opposition); Dkt. 57 (government's motion to dismiss). As their opposition shows, appellants have no response to the government's reasons why these appeals are barred by their appeal waivers and why their claim of error on appeal is manifestly insubstantial and appropriate for disposition by motion. *See* 4th Cir. R. 27(f)(2). Accordingly, there is no need for full merits briefing, and the Court should grant the government's motion.

Despite taking more than three weeks to file the opposition, appellants provide no reason to believe that their appeal waivers are not valid or should not be enforced, nor any reason to believe that their sentences were affected in any way by the district

1

court's alleged policy against Rule 11(c)(1)(C) guilty pleas. *See* Dkt. 65. Most of the opposition either recites the procedural history of these cases or riffs on the idea that district courts should not be able to categorically reject Type-C pleas. On the merits, appellants assert that the government should not be able to enforce appeal waivers on a "whim." *Id.* at 5. But where, as here, appellants never sought or even tried to negotiate a Type-C plea, and they instead negotiated plea agreements under Rule 11(c)(1)(B) that included waivers of the right to appeal, enforcing those waivers is not a "whim," but rather the foreseeable outcome of what they have bargained for. Appellants also call enforcing their waivers "inconsistent[]," *id.*, with those cases where defendants actually negotiated a Type-C plea, had the Type-C plea rejected by the district court, and then reserved the right to appeal the court's rejection of the plea. Because this case involves materially different facts—including no hint by appellants at any point below that they were interested in a Type-C plea—there is nothing inconsistent about the government's desire to enforce the appeal waivers that appellants validly entered into. Finally, appellants assert that the government "should explicate to this Court" why their waivers "should function." *Id.* at 8. The government has already done so, including an explanation of how the court informed appellants of their appeal waivers and made sure they understood them. *See* Dkt. 57 at 1-4. And because appellants do not explain why their appeal waivers should not be enforced, the Court should enforce them and dismiss their appeals.

Next, appellants appear to concede that they did not request, seek to negotiate, get offered, or have the district court deny any Type-C plea in this case. As for why they nonetheless believe that they may challenge their sentences based on the district court's alleged policy against Type-C pleas, appellants assert that their Type-B plea agreements "*could not have been a 'C' plea*" because of the court's alleged policy against such pleas. Dkt. 65 at 8-9. That, of course, is obviously false. If appellants had wanted to challenge the court's alleged policy against Type-C pleas, they could have negotiated Type-C pleas with the government and presented them to the court. And if the court rejected them under a policy of rejecting all Type-C pleas, appellants would then have been injured by the policy and could have sought to challenge the policy on appeal. Here, however, appellants did not even check to see whether the government would have been interested in negotiating a Type-C plea. So they were not harmed by any court policy against such pleas. What is more, they also have no basis to say that they did not have to present any Type-C plea (which, again, they did not seek, let alone receive) to the court because doing so would have been "beyond futile." *Id.* at 10.

As the government explained in its motion to dismiss, these appeals are "in fact manifestly insubstantial and appropriate for disposition by motion" precisely because there is no factual basis for appellants' claim that they should be resentenced under a non-existent, never-requested, and never-negotiated Type-C plea agreement

3

because the district court might have a categorical policy against such pleas. Dkt. 57 at 4-10. So it is false for appellants to claim that the government did not "illustrate" or "meaningfully argument" that point. Dkt. 65 at 10. It is also false for appellants to claim that there was "virtually no specific discussions" of their appeal waivers in their Rule 11 colloquies. *Id.* at 10-11. The government's motion to dismiss sets forth how the court informed appellants of their appeal waivers and made sure that they understood them and were validly entering into them. *See* Dkt. 57 at 2-3.

In sum, appellants validly waived their right to appeal their convictions and sentences. The Court should enforce those waivers and dismiss these appeals. In the alternative, the judgments below should be summarily affirmed. Appellants seek to vacate their sentences by challenging the district court's alleged policy against Type-C pleas. But appellants did not show interest in, seek, negotiate, or finalize any Type-C plea below. So there is no factual basis for their sole claim of error on appeal.

**WHEREFORE,** the United States respectfully asks that the Court grant our motion to dismiss these appeals or summarily affirm the judgments below.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/ David C. Bornstein
Assistant United States Attorney
Chief, Appellate Division
36 South Charles Street, 4th Floor

Baltimore, Maryland 21201
(410) 209-4800


## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

This motion reply complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains <u>892</u> words.

This motion reply also complies with the typeface and type-style requirements in Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced serif typeface and plain, roman style using Times New Roman in 14 point.

Dated:  March 22, 2026.    <u>/s/ David C. Bornstein</u>
         Assistant United States Attorney